553 P.2d 1233

**The STATE of Arizona, Appellee,**

v.

**Robert Anthony GOMEZ, Appellant.**

**No. 2 CA–CR 821–2.**

Court of Appeals of Arizona,
Division 2.

July 20, 1976.

**250**

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Solsberry & McDonald by Kerry A. McDonald, Nogales, for appellant.

## OPINION

KRUCKER, Judge.

This is an appeal from convictions of forgery, A.R.S. § 13-421, and theft by embezzlement, A.R.S. § 13-682, and concurrent sentences thereon of not less than eight nor more than ten years on the forgery charge and not less than eight nor more than ten years on the embezzlement charge.

We are asked to answer four questions on appeal:

1. Should the court have granted a dismissal because of lack of a proper preliminary hearing transcript, or, in the alternative, have ordered a new preliminary hearing?

2. Was there sufficient evidence to convict the defendant?

3. Was the title to the automobile properly admitted into evidence?

4. Was the finding of guilt on both the charge of embezzlement and forgery barred by law?

The pertinent facts are as follows. On June 3, 1975, Emma Cisneros purchased a 1964 Volkswagen van bus from one Chris Powers. A certificate of title was conveyed to Ms. Cisneros and testimony revealed that Gerald Wager, a notary public, notarized the signature of Chris Powers, which assigned the title to Ms. Cisneros.

The record reflects that Ms. Cisneros came in contact with appellant, Bobby Gomez while dining at the Coronado Inn in Nogales on the evening of June 7, 1975. Appellant expressed interest in purchasing the 1964 VW microbus for $500, predicated upon a one-hour test drive. Ms. Cisneros agreed and when appellant failed to return after one and a half hours, she left the restaurant. For the next three months she was unsuccessful in her attempts to locate either the vehicle or appellant.

On September 17, 1975, Ms. Cisneros observed her VW microbus at the Diaz Garage in Nogales, Arizona. Mr. Diaz, a mechanic, testified that in mid-June, 1975, the vehicle was delivered for repairs to his garage in Mexico by Mr. Rodolfo Gomez, appellant's uncle. Although the record is not completely clear, apparently at a later date Diaz contacted Gomez to inform him that the repairs were complete. Diaz was directed to bring the microbus to the garage in Nogales, Arizona, which was owned by his uncle. The vehicle was delivered at noon on September 17, 1975.

After observing the microbus, Ms. Cisneros removed the ignition keys and told Mr. Diaz to send the person who claimed the van to her office at the Wager Insurance Agency in Nogales, Arizona. That same day appellant appeared at the Wager Insurance Agency to pick up the keys to the vehicle. Upon Ms. Cisneros' refusal to give up the keys, appellant left the agency but later returned with the certificate of title. Claiming that he did not want to have anything else to do with the car, Gomez gave the title to Ms. Cisneros.

The name and address of Ms. Cisneros had been removed from the certificate and replaced with the name and address of Bobby Gomez. Testimony revealed that the document was on the sun visor of the microbus when it was loaned to appellant on June 7, 1975.

On October 22, 1975, a preliminary hearing was held in the Santa Cruz County Justice Court. On January 14, 1976, verdicts of guilty were returned against appellant after a trial by jury on the aforementioned counts.

## PRELIMINARY HEARING TRANSCRIPT

Appellant's first contention on appeal is that the trial court erred in refusing to grant a dismissal because of failure to provide him with a proper preliminary hearing transcript. In the alternative, he argues that a new preliminary hearing should have been ordered. It is urged that the failure of the justice court to properly transcribe the hearing denied appellant his constitutional rights of confrontation and proper representation by counsel. We do not agree.

Rule 5.2, Rules of Criminal Procedure, 17 A.R.S., provides in part that in a probable cause hearing the magistrate ". . . shall secure a court reporter to record the proceedings, unless the reporter is waived by both parties." The record reflects that the magistrate failed to substantially comply with this statute. For reasons unknown, a court reporter was not present at the hearing, although the hearing was electronically recorded for later transcription. the recording was evidently of poor quality as later verbatim transcription was precluded.

■ The Rules of Criminal Procedure are designed to protect the fundamental rights of the individual and to promote simplicity in procedure while eliminating unnecessary delay and expense. Rule 1.2, Rules of Criminal Procedure, 17 A.R.S. It is our opinion that appellant had adequate remedy which he failed to pursue in a timely manner.

Rules 5.5(a) and 5.5(b), Rules of Criminal Procedure, 17 A.R.S., provide:

"a. Grounds. A magistrate's determination to bind over a defendant shall be reviewable in the Superior Court only by a motion for a new finding of probable cause alleging that the defendant was denied a substantial procedural right or that no credible evidence of guilt was adduced. This motion shall allege specifically the ways in which such evidence was lacking.

"b. Timeliness. A motion under Rule 5.5(a) may be filed *no later than 25 days after* the completion of the preliminary hearing. (Emphasis added)

■ In the case at bar, counsel for appellant did not raise the issue of the absence of a complete transcript until the day of trial. As the preliminary hearing was conducted on October 22, 1975, and the trial commenced on January 14, 1976, almost three months had passed before objection was made. This is far beyond the 25-day period prescribed by Rule 5.5(b).

In these circumstances, where appellant's counsel was present at the preliminary hearing, knew of the absence of a court reporter and never objected to the deficient transcript until the morning of the trial, he should not now be heard to complain.

We find it unnecessary to consider additional contentions raised by appellant on this point.

## SUFFICIENCY OF THE EVIDENCE

Appellant's second contention on appeal is that the State failed to present sufficient evidence to convict him of the crime of forgery. A.R.S. § 13–421(A)(1). Specifically, he complains that there was no showing that he actually did forge his name upon the document in question or of the requisite intent to defraud.

■ We have held that intent to defraud is an essential element of forgery. *State v. Hernandez,* 4 Ariz.App. 451, 421 P.2d 533 (1966). However, intent to defraud may be, and often must be, inferred, from the circumstances in which the false instrument is executed or issued. *State v. Maxwell,* 95 Ariz. 396, 391 P.2d 560 (1964); *see also, State v. Hoffman,* 78 Ariz. 319, 279 P.2d 898 (1955).

We do not require direct evidence of appellant physically obscuring or obliterating Ms. Cisneros' name and address with liquid paper and inserting his own. To do so would place a virtually impossible burden on the State. It is not within the best interests of justice to grant a special status to covert activities by rendering immune from prosecution those individuals performing actions outside the public view.

In the case at bench, a certificate of title was transferred to Ms. Cisneros and the signature of the transferor, Chris Powers, was notarized. Ms. Cisneros testified that the title was inside the microbus when appellant took the vehicle on June 7, 1975. She further testified that she next saw this document on September 17, 1975, when appellant produced it from his wallet at her place of work and returned it to her. Her name and address, which had appeared on the document, were replaced by that of appellant.

■ We have no difficulty in concluding that the circumstances of the disappearance and recovery of the vehicle, along with appellant's physical possession of the altered document, provided sufficient evidence to support the jury's determination that appellant altered the document with intent to defraud or aided and abetted the alteration with the same intent.

■ Appellant also contends that the State never showed "that the appellant ever embezzled anything" in violation of A.R.S. § 13–682. We have stated that the gist of the crime of embezzlement is a breach of trust. *State v. Mackey,* 15 Ariz.App. 417, 489 P.2d 80 (1971); *State v. Scofield,* 7 Ariz.App. 307, 438 P.2d 776 (1968). The elements necessary to establish embezzlement are a trust relation, possession or control of property by virtue of the trust relation, and a fraudulent appropriation of the property to a use or purpose not in the due and lawful execution of the trust. *State v. McCormick,* 7 Ariz. App. 576, 442 P.2d 134 (1968), vacated on other grounds, 104 Ariz. 18, 448 P.2d 74 (1968).

■ We believe there is ample evidence to support appellant's conviction of embezzlement. The record reflects that during a discussion of the possibility of appellant's purchase of Ms. Cisneros' VW microbus, appellant requested possession and control of the vehicle for the purpose of a test drive and stated that he would return "in about an hour or so." Ms. Cisneros waited for approximately one and a half hours before leaving the restaurant where she had met appellant. From early June until the discovery of the van in mid-September she attempted to locate both appellant and the vehicle.

The foregoing certainly reflects that possession and control of the microbus was entrusted to appellant for the express and limited purpose of a one-hour test drive as a condition of purchase. The vehicle was never returned and at no time did appellant tender payment for it or notify Ms. Cisneros of its whereabouts. Instead, from June 7 until its discovery on September 17, the microbus was apparently converted to appellant's own use.[1] The elements of *McCormick* are satisfied by the evidence. The requisite intent is inferred from the circumstances. *State v. McCormick,* supra, at 584, 442 P.2d 134.

## TITLE TO THE AUTOMOBILE

As a third ground for appeal appellant contends that the title to the automobile was improperly admitted into evidence in that Powers was not called to identify his purported signature on the title. Appellant argues that if the signature is not identified by the person who made it, then the evidence is irrelevant.

■ It is hornbook law that in seeking to introduce evidence of a fact or item of proof one must generally show the circumstances which make the particular fact or item relevant to an issue in the case. McCormick on Evidence § 185 (1954). In

1. Although it was garaged for repairs from mid-June to September 17.

dealing with writings and documents, relevancy obviously may depend upon the authorship of the writing. Thus, if a writing is to be properly admitted and accepted for consideration, the identity of the author must generally be established.

In the case at bar, we believe the certificate of title could properly have been admitted on either of two grounds. Perhaps the simplest method of authenticating a writing or document as being that of a particular individual is to produce a witness who has stated under oath that he witnessed such individual sign the offered writing. *See* McCormick, supra, § 187.

The following testimony was elicited from Ms. Cisneros on direct examination:

"Q. Do you recall when you received that certificate?

A. June 3, 1975.

Q. June 3, 1975?

A. M'hm.

Q. Where did you receive that certificate?

A. At Carlos Sainz's house.

Q. Who was present?

A. Chris Powers, Carlos Sainz, and I.

Q. Were there any signatures on that document at that time did you have occasion to sign that document?

A. Yes, I signed on that day and *Chris Powers signed too*." (Emphasis added)

Although the record is not without some ambiguity, we view the testimony as indicating that Ms. Cisneros was present when Chris Powers signed the document.

 In any event, the certificate of vehicle title had been notarized. The record reflects that Gerald Wager, a notary public for the State of Arizona, notarized the signature of Powers on June 3, 1975. Although Powers' signature was already on the document, Wager, who knew Powers, asked him ". . . if he had signed it, or

I had him write his name down, I don't know which."

Insofar as the document was identified as an official certificate of title and as the document delivered to Ms. Cisneros by Chris Powers, whose signature was notarized by a notary public, we find that sufficient identification was presented to allow the document into evidence.

## DOUBLE PUNISHMENT

A.R.S. § 13–1641 provides:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

It is appellant's contention that the acts relied on to convict him of both forgery and embezzlement are the same acts, thereby violating the statutory prohibition against double punishment. We disagree.

 The test to be applied in determining whether A.R.S. § 13–1641 is applicable is to ". . . eliminate the elements in one charge and determine whether the facts left would support the other charge." *State v. George,* 108 Ariz. 5, 491 P.2d 838 (1971); *State v. Tinghitella,* 108 Ariz. 1, 491 P.2d 834 (1971); *State v. Reim,* 26 Ariz.App. 528, 549 P.2d 1046 (1976).

 It is obvious that elimination of the forgery elements still leaves sufficient facts to support the embezzlement charge. As appellee rightfully points out—one may forge a document by altering it in some manner (here, the certificate of title), yet also embezzle property of a different nature.

It is our opinion that appellant committed the offense of embezzlement when, entrusted with the microbus, he chose to put it to a use not intended. The offense of forgery occurred later when he either removed Ms. Cisneros' name from the docu-

ment and replaced it with his own or aided and abetted the forgery. Accordingly, we reject appellant's contention that he was doubly punished.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.